( Decided June 14th, 1858.)

# John J. Heckart *vs.* Daniel H. McPhail, Lottery Commissioner.

By the act of 1839, ch. 234, certain commissioners were authorized to raise, by *lottery*, for a specified purpose, "the sum of $30,000, *free* and *clear* of *all charges* and *interest whatsoever*," and this grant was afterwards consolidated with the State lotteries, by the act of 1842, ch. 74, which directed the State Lottery Commissioners to draw the lottery, and pay over to the commissioners named in the grant, the money authorized to be raised. HELD:

That the *special commissioners* named in the act of 1839, were the proper parties to ascertain the amount of *expenses* and interest incurred, and a *decree* of a court of competent jurisdiction, in a case in which such *commissioners* were defendants, and the *assignees* of the grant complainants, *ascertaining* the sum due *on a basis* making an *allowance for expenses*, entered upon the books of the *State Lottery Commissioners*, is binding upon them and their *successors*, unless obtained by collusion or fraud.

APPEAL from the Superior Court of Baltimore city.

This was an application, made by the appellant, for a rule upon the appellee to show cause why a *mandamus* should not issue, commanding him, as State Lottery Commissioner, to issue his draft on the Lottery Contractor for payment of a balance of $546.29, on the semi-annual instalments, due the petitioner, under a certain decree of Baltimore County Court.

The petition states that, by the act of 1839, ch. 234, certain commissioners therein named were authorised to raise, by a

lottery, "the sum of $30,000, *free* and *clear* of *all charges* and *interest whatsoever*," for the purpose of building, by contract, an outlet lock on the Tide Water Canal, opposite Port Deposit; that subsequently, by the act of 1842, ch. 74, this lottery was consolidated with the State lotteries, and made subject to the legal provisions attached to them; that in January 1847, the commissioners named in the act of 1839, contracted with certain parties for the building of this lock, and agreed to assign to them, therefor, all the money arising from this lottery; that the lock was duly built, according to contract, and the contractors assigned their interest in the lottery to Wilmer, Heckart and Tome, one-fourth each to the first two, and one-half to the last named; that, subsequently, these assignees applied to the then State Lottery Commissioners for the proper amounts due them under the distribution adopted under the lottery system, but the commissioners refused to recognize them as assignees, until some legal proceedings were taken to make a proper transfer of this lottery grant to them, and a direction from a proper court to the commissioners, ordering payment of the sum ascertained to be due them; that thereupon Wilmer, Heckart and Tome filed their bill on the equity side of the Superior Court of Baltimore city, in December 1851, against the commissioners named in the act of 1839, and a decree (a copy of which is filed with the petition) was therein passed by the court, on the 30th of December 1851, directing the defendants to transfer to the complainants this lottery grant, and "that the said complainants be entitled to receive from the State Lottery Commissioners, and their successors, such sum, semi-annually, as amounts to the proportion of said lottery grant, out of the proceeds of the State lotteries, until the said complainants receive the sum of $15,034.92, being the residue of the $30,000, authorized by said act of 1839, ch. 234, to be raised, after deducting what has been paid to the said defendants, over and above their expenses," and that this sum be paid to the complainants in the proportion of one-half to Tome, and one-fourth each to Wilmer and Heckart. The petition further states, that after the passage of this decree, a copy thereof was filed with the State Lottery Commissioners, and recorded upon

their official books, and assignments made under it, with their concurrence and approval; that the State Lottery Commissioners were succeeded by the State Lottery Commissioner elected under sec. 7, art. 4, of the present constitution of the State, and this officer, under the direction of the 5th section of the same article, in relation to making such contract or contracts as would extinguish all existing lottery grants before the 1st of April 1859, and under the direct authority contained in the act of 1852, ch. 113, made a contract with R. France, providing therein for the payment, on the draft of the Lottery Commissioner, to the persons or bodies politic or corporate, in equal semi-annual instalments, of the sum to be distributed amongst the existing lottery grants, during the term of such contract; that after making this contract, the State Lottery Commissioner made certain distributions under the lottery created by the act of 1839, but not in the proportions according to the aforesaid decree, nor of the constitution and law, and not in such equal semi-annual instalments as will pay the holders thereof the sum decreed by the court to be paid to them within the time prescribed by the constitution; that the sum allowed and ascertained to be due by the decree, was $15,034.22, and that prior to the first distribution, under the new contract, there had been distributed the sum of $1063.82, leaving due, October 1st, 1852, the sum of $13,430.38, to extinguish which, prior to April 1st, 1859, would require semi-annual distributions of $959.31¼, commencing on the 1st of October 1852; that, instead of distributing this amount, the commissioner has made semi-annual distributions of $716.45, which, in the aggregate, amounted, on the 1st of October 1856, to $6448.65, instead of $8633.82, leaving a balance due the holders, on that day, of $2185.17, of which $546.29 is due the petitioner; that this $6448.65 was received under protest by the petitioner, and he charges that he has again and again demanded of the State Lottery Commissioners, severally elected under the constitution, his proper drafts upon the contractor aforesaid, and has demanded of them a draft for the balance due him on the distributions already made, and has demanded of the present Lottery Commissioner a draft for the

sum of $546.29, being the amount still due him on the proper semi-annual payments, but that each of these demands has been refused, and that he is remediless in the premises, except by a writ of *mandamus.*

The rule was laid, and the appellee showed cause. He admits the grant made by the act of 1839, and its union with the consolidated lotteries, by the act of 1842, so as to give it the benefit of the receipts, on account of those lotteries beginning with the fiscal year which commenced 1st of December 1843. That the amount then entered on the books of the commissioners, as to be raised, was $30,000, and no more, being the sum mentioned in the act of 1839. That it does not appear, from the records of the State Commissioners of Lotteries, that they were ever notified by the commissioners named in the grant, or any one for them, while they remained in possession of it, or by any of the assignees, after their title accrued, that any charges or interest had been paid or incurred on account of the grant, so as to make it necessary to raise any sum for such charges and interest, over and above the $30,000. That the commissioners of the grant never attempted to sell tickets or draw schemes, and incurred no expense or responsibility on account of the grant, before its consolidation, and that no claims for any charges or interest were ever notified to the State Commissioners, and no demand has ever been made on any of them to raise any sums on such account, over and above the $30,000. That, on the contrary, the first payment made on the grant, in July 1844, was calculated on the basis of $30,000, and that all the payments since, have been made on the same basis. That in 1852, the then Lottery Commissioner, (Stewart,) pursuant to the provisions of the new constitution, made a contract for the extinguishment of the then existing grants, and fixed and ascertained the amount to be raised on this grant at the sum of $10,030.40, payable in equal semi-annual instalments of $716.45$\frac{5}{7}$, on the 1st of April and October, in each year, beginning with the 1st of October 1852, and that the basis assumed by him, was the same which had been assumed by all his predecessors, viz: the sum of $30,000, and that no claim was at any time made

upon Stewart for the raising of any additional sum as interest or charges. That as early as October 1852, the assignees of the grant, and among them the petitioner, were notified of the sum so ascertained and settled by Commissioner Stewart, and when so notified, and the petitioner and the other assignees recognized the correctness of the ascertainment by receiving the sums payable accordingly. That on the 1st of October 1853, the commissioner drew on the contractor for $716.45, in three drafts, one of which, for a fourth thereof, was so drawn in favor of the petitioner, and paid by the contractor on the endorsement thereof by the petitioner. That the same thing was twice repeated in 1853, twice in 1854, twice in 1855, and twice in 1856, in regard to the petitioner and the other assignees, each receiving and endorsing his separate drafts. That the petitioner did not object till in the term of the commissioner who went into office in 1854, and that another of the assignees did not object till 1856, and that the third (who owns half the grant) has never objected. That the State Commissioner never asked of the commissioners of this grant, or their assignees, anything more than what is contained in two letters addressed to them in December 1851, which show that the State officers merely requested a proper assignment to be executed from the commissioners named in the grant to their assignees. That in January 1852, a copy of the decree mentioned in the petition was recorded in the office of the Commissioner of Lotteries, with an assignment thereon by Tome to Vandiver, and he files a full record of the proceedings in the case in which the decree was passed. That this decree, if binding at all, is binding only on the parties to it, and does not conclude respondent, or the interests he represents. That upon the face of the proceedings, as well as otherwise, the decree is erroneous and irregular, and is of no force or validity whatsoever, for the purpose for which it is relied on, of settling the amount payable on said grant by the State Commissioners, and that it has never been recognized for any such purpose by any of said commissioners. He further pleads that the remedy sought is not appropriate, and that the contractor, France, ought to be a party to any proceedings in which his interests are so involved as in the claim now set up.

Heckart *vs.* McPhail, Lottery Commissioner.

The record of the case in which the decree relied on was passed, shows that the complainants in it are Wilmer, Heckart (the petitioner) and Tome, and the defendants, Smith, Roman and Anderson, commissioners named in the act of 1839. The complainants there allege, among other things, that since the consolidation of said lottery grant with the State lotteries, the commissioners named in said grant have received, in virtue thereof, the sum of $18,368.78, and have expended, in and about the execution of the said lottery grant, and in the performance of their duties as commissioners, the sum of $3400, leaving a net sum, over and above expenses, amounting to $14,968.78, which they have paid over to the complainants, and that there is still due and accruing to them the sum of $15,034.22, which is to be raised by the State Lottery Commissioners. The answer of the defendants, which was accepted without oath, admits the allegations of the bill, and consents to a decree which was passed on the same day the bill was filed, (20th December 1851,) and is worded as set forth in the petition.

The court (LEE, J.,) refused the application and discharged the rule, and from this decision the petitioner appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Note.*—In the argument of the cause, the counsel for the appellee waived all objection to the form of action, and that question was not discussed.

*Wm. P. Whyte* for the appellant:

The act of 1839, expressly required $30,000 to be raised, exclusive of *all charges and interest;* that is, $30,000 were to be actually paid for building the lock. It matters not what the answer alleges in relation to the entry on their books, in 1844, by the Lottery Commissioners, that the sum of $30,000, and no more, was to be raised, because at that period no charge whatever could have accrued against the grant, inasmuch as no contract was made for building the lock till 1847,

and, of course, the payments made to the commissioners named in the grant, were merely on account, and as there was then no limit to the period during which lotteries could be drawn in the State, any deficiency could be made up afterwards. The act of 1839 contemplates the payment of *charges* and *interest* exclusive of the $30,000. The contractors for building the lock had to look to the commissioners named in the act for the fulfilment of the terms of the contract, which was to transfer to them the $30,000, *free of all charges*, of which charges *those commissioners were the sole judges*, and to get a proper assignment of the grant, the decree relied on was obtained from a court of competent jurisdiction, between proper parties, and adopted, sanctioned and enrolled upon the records of the State Lottery Commissioner's office. This decree cannot be questioned in *this proceeding*, but is final and conclusive of the question adjudicated, and cannot be impeached on the ground of informality in the proceedings, or error or mistake of the court in the matter adjudicated. 2 *H. & G.*, 50, *Raborg vs. Hammond.* 3 *Md. Rep.*, 54, *Ranoul vs. Griffie.* 9 *Gill*, 222, *Powles vs. Dilley.* 1 *Greenlf. on Ev.*, sec. 551. If the decree was not correct, it should not have been adopted and recorded as a valid assignment, and before the new contract was made, it was before the commissioner to guide him in his estimate of the amount to be raised before April 1st, 1859. The new contract does not call for the payment of any specific sum, but to pay *all sums* authorized to be raised by the lottery grants, that they might be *wholly* paid off. Such was the express direction of the constitution, and the act of 1852, ch. 113. The objection, that the parties to the suit are the only persons bound by the decree, is not tenable, for, in the case of a suit on a trustee's bond, the defendant cannot question the correctness of the original decree for a sale, nor the order distributing the purchase money. 2 *Gill*, 439, *Richardson vs. State, use of Rawlings.* The State Lottery Commissioner held a similar position to the appellant. But if the decree were not conclusive, and the question of charges could be investigated, *who* are to be the *judges* of the charges, save the *commissioners under the act of* 1839. They

gave bond for the performance of the duties; they made the contract for building the lock; they superintended its construction, and they are entitled to charges.   Whatever may be the policy of other States, it is the settled policy of this to pay all agents employed in the public service.   The State Lottery Commissioner is paid for drawing the lotteries.   The Visitors of the Penitentiary are paid.   The Commissioners of Public Works are paid.   Laws are passed, during each session of the Legislature, paying persons for special services to the State. The case in Delaware, of *State vs. Platt,* 4 *Harrington,* 163, is not applicable to this, as the parties deducting *"expenses"* there were the Trustees of the College, and had parted with possession of the entire grant, and they had no duties to perform.

*J. Mason Campbell* for the appellee:

The unexhausted amount of the grant claimed by the petitioner, was rightly fixed, by Commissioner Stewart, at $10,030.40.   The original sum to be raised was $30,000, free and clear of all charges and interest whatsoever.   Neither the commissioners of the grant, nor its assignees, nor any one, ever has made any claim to the raising of any sum for interest or charges, nor does the petition in this case disclose that there were charges incurred or interest paid.   The sum of $30,000, then, which has been exclusively adopted, and, till within a short period, assented to by all parties as the sum to be raised, is all that the present petitioner can claim.   The very decree itself, on which he relies, expressly affirms the same thing, and describes the grant as one for *"$30,000, authorized by the act of* 1839, *ch.* 234, *to be raised."*   This sum being settled, the only question is, what portion of it had been raised when Commissioner Stewart made the contract, under the new constitution, to raise the residue?   The full record filed by the defendant, of the proceedings in the cause in which the decree was passed, ascertains this by the admission of the petitioner himself, he being one of the complainants in that cause.   That bill states the sum raised and paid to the commissioners of the grant, before the assignment made by them, at $18,368.78,

and the present petition sets out the amount paid, after the assignment and before the new contract, at $1603.83, making $19,972.62, which, deducted from $30,000, leaves $1027.40 as all that remained to be raised, which is $3 less than the amount fixed by Commissioner Stewart. Nor is it any answer to this simple and conclusive statement, that the bill which admits the payments prior to the assignment, claims also that there was paid away $3400 of that amount, so as to leave a net receipt, on that hypothesis, of only $14,968.78. It is not stated for what the $3400 was expended, nor is there any proof in the record on that point. That bill was filed by the parties entitled to an assignment of the grant, the present petitioner being one of them, against the commissioners of the grant, for an assignment of it. There was no reason for any such proceeding. The commissioners were willing to assign, and could have assigned, without any decree. The bill, as filed, was admitted without oath or proof, and a decree passed. The State Lottery Commissioners were no parties to the proceeding, and it is of no force as against any one but the parties to it. The decree itself, however, by a strange oversight of the parties, makes a statement fatal to the claim which it was possibly the object of these strange proceedings to accomplish, for it denies any right *to raise* more than $30,000. But, again, the acquiescence of the assignees in the amount settled by the Lottery Commissioner, is not only itself conclusive testimony to the correctness of the ascertainment, but also a bar to the present proceeding.

Le Grand, C. J., delivered the opinion of this court.

This is an application for a *mandamus*. Whether or not it should issue, depends, in our judgment, upon the construction which ought to be placed upon certain acts of Assembly.

The act of 1839, ch. 234, (after an allusion to a previous act,) in its first section, provides, that for the purpose of building an out-let lock at Bell's ferry, opposite Port Deposit, on the Susquehanna canal, certain named persons were appointed commissioners, "with *full* power and authority, by a *scheme* or *schemes* of lottery, and the *sales* thereof, or of the *tickets*

therein, and without being subject to *any tax whatsoever*, to raise the sum of $30,000, *free* and *clear* of *all charges* and *interest* whatsoever."

By the act of 1842, ch. 74, the grant of the act of 1839 was consolidated *with* the State lotteries. This act *directed* the Commissioners of Lotteries to pay to the commissioners *named* in *the original* act, or appointed in pursuance thereof, a ratable proportion, semi-annually, of the sum authorized by the original act.

The act of 1852, ch. 113, gives to the Lottery Commissioner, under the present constitution of the State, the power of the commissioners under previous legislation, and by its fourth section provides, "that the Commissioner of Lotteries, on the maturity of each instalment for distribution, *shall* divide and *distribute* the same, *pro rata*, amongst the persons and bodies corporate or politic *entitled to receive the same.*"

The petition alleges, that in the year 1847, the commissioners mentioned *in the act of* 1839, contracted with certain parties for building the lock, and all moneys arising from the lottery authorized by the act of 1839; that the lock was duly built and completed, according to contract, and the contractors assigned their interest in and to said lottery grant to certain persons, in certain proportions, and that among these assignees is the appellant, with interest in the proportion set out in his application for the *mandamus;* that the Lottery Commissioners refused to recognize the assignees until some legal proceedings were taken to make a proper transfer of said lottery grant to the assignees, and a direction from a proper court to the commissioners, ordering the payment of the sum ascertained to be due to them. The petition then avers, that because of this refusal of the Lottery Commissioners, a proceeding was had in the Superior Court of Baltimore city, whereby it was decreed that the complainants "be entitled to receive from the State Lottery Commissioners, and their successors, such sum, semi-annually, as amounts to the proportion of said lottery grant, out of the proceeds of the State lotteries, until the said complainants receive the sum of fifteen thousand dollars and ninety-two cents. being the *residue* of the thirty thousand dol-

lars authorized by said act of 1839, ch. 234, to be raised, *after deducting what has been paid to the said defendants, over and above their expenses.*"

To this petition the defendant, admitting the passage of the several acts of Assembly, proceeds to give his opinion of the legal effect of certain acts, both of commissioners under the old constitution and those who were named in the legislation in relation to the grant for the lock, and also of the contractors and assignees. He avers that his predecessor did not recognize the obligation to raise, under the grant, more than thirty thousand dollars, and that, with this understanding of his duty, he made semi-annual distributions on this basis.

At the time the decree was passed, Messrs. Wharton and Dickenson were the commissioners. On the adoption of the new constitution, they were succeeded by Mr. Stewart; and he by Mr. Roberts, and Mr. Roberts by the present appellee. From this statement, it must be apparent the appellee, as Lottery Commissioner, has no personal knowledge of the earlier circumstances attending the grant; his knowledge, as such, is only derivable from his experience since he became commissioner, and from what the records of the commissioners who preceded him disclose. His own personal knowledge, as such, only evidences the fact that the appellant received a sum on a basis which excluded "expenses" as ascertained by the decree, and did so under protest. His construction of the legal operation of the acts of the Superior Court, and of those of the commissioners under the old constitution, can have no influence, because they are matters of law, and not of fact.

. On this state of case, the question is, ought the writ to issue? We are of opinion it should. It must be recollected, that under the act of 1839, (the one authorizing this grant,) the commissioner therein named and authorized by it to be appointed, *so far as this particular grant is concerned,* had as much power as had the State Lottery Commissioners over grants placed, by other acts of Assembly, under their direction, and subject to their control. So far as this grant was concerned, the act of 1839 was, *pro tanto,* a repeal of the authority conferred on the State Lottery Commissioners; and what

the latter could do in regard to grants placed under their juris-diction, the act of 1839 authorized its commissioners to do in reference to the particular grant. They were empowered to raise, for the specified purpose, $30,000, *"free* and *clear* of *all* charges and interest *whatsoever."* This was their power. Now, who was to determine whether $30,000 was raised, "free and clear of all charges," &c? Certainly themselves, and none others. If this be not so, then by what authority did the Lottery Commissioners determine? If one set had not the power, then the other had not, for the power over the particular cases is the same, and derived from the same source, namely, acts of Assembly. Of course we allude to cases free from fraud, for in such cases the ascertainment, as in all other cases, when proved, would not avail against parties in interest. But there is no fraud alleged in the case at bar, the defence being, simply, that the decree of the Superior Court is not binding, and that there is no proof of any expenses beyond the $30,000 authorized to be raised. If the decree be bind-ing, then this objection is of no force, because the decree con-cludes the party from availing himself of it in this proceeding. We are clearly of the opinion that the decree and the entry of it with the assignment on the books of the Lottery Commis-sioners, did conclude them, because the court passing the de-cree was one of competent jurisdiction, and because the parties to it were the only parties whose interest, in the then posture of affairs, was involved. The contractor not being nominally a party to this proceeding, whatever position he may, in reality, occupy toward it, we abstain from comment on the terms of his contract. We are to be understood as saying nothing in this opinion as concluding any rights he may have under his contract.

By the act of 1839, the State empowered certain enumer-ated persons to perform and fulfill a trust; the object to be ac-complished (viz: the construction of the lock) was to be ac-complished under their supervision and direction; and the expenses to be incurred, and the interest to be paid, were to be ascertained and paid by them. Their appointment by the Legislature entitles them to an exemption from the charge of

having abused their powers, unless such a charge be supported by proof. In the absence of all evidence to the contrary, the presumption must be, that they have ascertained the amount of interest and expenses correctly. Besides, under the act of 1842, ch. 74, sec. 2, they were compelled to give bond for the faithful discharge of their duties.

The State Lottery Commissioners were, by the act of 1842, charged with the duty of drawing the lottery, and paying over to the commissioners named in the grant, the money authorized to be raised. Nowhere do we find any power or authority conferred upon them to supervise the acts of the special commissioners, or to make the ascertainment of the amount of expenses and interest incurred. They were directed to apportion the money raised among the several consolidated grants; but the distribution was to be made, so far as the grant in question is concerned, upon the basis ascertained by the special commissioners. In this case the decree was such an ascertainment, made by the proper parties, and if made *bona fide*, is conclusive of the question. If there was collusion or fraud in the ascertainment, a corrective may be applied, so as to prevent the abuse of the powers and privileges granted; the proceedings before us show neither.

*Judgment reversed, writ ordered,*

*and procedendo awarded.*

(Decided June 14th, 1858.)